UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2010 OCT 29 A 9: 31

U.S. DISTRICT COURT
NEW HAVEN, CT

----------------------------------X

HUGH CURRIE,

      PLAINTIFF,

      v.

METRO-NORTH RAILROAD COMPANY AND
NATIONAL RAILROAD PASSENGER
CORPORATION, ET AL.

      DEFENDANTS.

----------------------------------X

CIVIL NO.

3:06-CV-01575 (EBB)

**RULING ON PLAINTIFF'S MOTIONS IN LIMINE**

The plaintiff, Hugh Currie ("Currie"), has brought an action against the defendant, Metro-North Commuter Railroad Company ("Metro-North"), claiming that he suffered injuries as a result of the defendant's negligence.[1] Pending before the Court is Currie's Motion in Limine Regarding Contributory Negligence Defense [doc. # 75] and the plaintiff's Motion in Limine Regarding Mitigation Defense [doc. # 76]. For the reasons set forth below, the plaintiff's motions are DENIED.

---

[1] In his complaint, the plaintiff also named the National Railroad Passenger Corporation ("Amtrak") as a defendant. Amtrak filed a motion for summary judgment which was granted and, therefore, is no longer a defendant. See Memorandum of Decision and Order [doc. # 42].

1

## I. CONTRIBUTORY NEGLIGENCE DEFENSE

Metro-North is a common carrier operating a railroad between New York, New York and New Haven, Connecticut. Currie, in his Motion in Limine Regarding Contributory Negligence Defense, makes the following factual claims. On May 19, 2005, he ate dinner at a restaurant in New Haven where he drank enough alcohol to become physically intoxicated. Later that evening, he walked to Union Station in New Haven to take a train to his home in Madison, Connecticut. After arriving at the station he boarded an open train car operated by Metro-North. Thereafter, the doors to the train car closed, and the train car traveled for roughly 10-15 minutes. When the train stopped, the doors opened but there was no station outside. Currie searched the train for an employee to assist him but he was unable to find anyone. Currie concedes that although he had a working cell phone with him, he did not use it to call for help. Instead, he "hopped out" of the train car onto the ground below and, upon landing, he broke his left ankle.

A. Discussion

Metro-North has asserted as a special defense a claim of contributory negligence. Specifically, Metro-North alleges that "[i]f [Currie] sustained the injuries and damages in the manner and to the extent as alleged in his complaint . . . then said injuries and damages were caused in whole or in part by his own carelessness and negligence." Currie moves to exclude Metro-North's defense of contributory negligence on the grounds that a common carrier has a heightened duty of care with regard to a *passenger* who is *intoxicated*, and thus contributory negligence is not a defense where the proximate cause of such a plaintiff's injuries is his intoxication.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994). Thus, the first step in almost any negligence action is to determine what duty a defendant owed to the plaintiff. A common carrier such as Metro-North owes to its passengers "the duty of using the highest practicable degree of human skill, care, vigilance and forethought." DOUGLAS B. WRIGHT ET AL., CONNECTICUT LAW OF TORTS § 85 (3d ed. 1991). A person becomes a passenger on a railroad "when, intending to take passage on its train due to depart for his proposed destination within a

3

reasonable time, he enters a place provided by it for the reception and accommodation of persons intending to board its trains at a time when such place is open for such reception." Baril v. New York, N.H. & H.R. Co., 90 Conn. 74 (1915). The Connecticut Supreme Court has held that "[a] common carrier, having upon its train a passenger who is so intoxicated as not to be able to look out for his own safety, when it knows or in the exercise of reasonable care should know his condition, is bound to exercise a degree of care for his protection commensurate with his inability to guard himself from danger." Dokus v. Palmer, 130 Conn. 247, 251 (1943) (intoxicated passenger killed when he stepped off train before it stopped).

Currie's motion is necessarily predicated on the presumption that he was a passenger at the time of his injury. Metro-North, however, has continuously maintained that the plaintiff was not a passenger, but rather was a trespasser at the time of his injury. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." RESTATEMENT (SECOND) OF TORTS § 329 (1965).

As Metro-North correctly points out, Judge Thompson previously found, in his ruling denying the defendant's motion for summary judgment, that "genuine issues of material fact exist

. . . as to whether the defendant was a passenger. . . ." Since Judge Thompson's ruling, Currie has done nothing in the way of presenting new evidence or other legal theory demonstrating that the issue of his status is no longer in reasonable dispute. Because Currie's motion to preclude Metro-North from presenting a contributory negligence defense relies entirely on the presumption that he was a passenger and not, as Metro-North contends, a trespasser, his argument fails.[2] For this reason,

---

[2] Even if it is eventually established that the plaintiff was a passenger, it is unlikely that such status would be dispositive as to the issue of contributory negligence. In McMahon v. New York, N.H. & H.R. Co., 136 Conn. 372 (1950) (carrier employee failed to close train door and intoxicated passenger fell off moving train) the Connecticut Supreme Court noted that whether a plaintiff who was intoxicated at the time of injury "[is] guilty of contributory negligence which *did not result* from his intoxication [is] . . . a *question of fact for the jury*." (Emphases added). As such, the defendant in the present case is entitled, at a minimum, to have a jury determine whether the plaintiff is guilty of contributory negligence *which did not result from his intoxication*.

The court is also mindful of changes in Connecticut tort law in the sixty years that have elapsed since Dokus and McMahon were decided. The term contributory negligence, as it is used by Connecticut courts today, refers in fact to the doctrine of comparative negligence. Prior to 1973, "[t]he common law doctrines of contributory negligence and assumption of risk operated, theoretically at least, to bar recovery where a plaintiff was chargeable with even the slightest degree of fault." George A. Seden, Comparative Negligence Adopted in Connecticut, 47 Conn. B.J. 416, 417 (1973). In 1973, the Connecticut legislature abolished both common law doctrines, and today fault is apportioned among the liable parties, including the injured party. In modern actions for personal injury in Connecticut, contributory negligence "merely operates to diminish the amount recovered as damages in proportion to the percentage of negligence attributable to the person recovering." Gomeau v.

Currie's motion to restrict Metro-North from presenting a contributory negligence defense is denied.

## II. MITIGATION OF DAMAGES

In his Motion in Limine Regarding Mitigation Defense, Currie claims that when he "hopped out" of the train car he fractured his ankle. After an initial surgery in which hardware was inserted to treat his fracture, his wound did not fully close due to an infection, and a second surgery was required to remove the hardware and treat the infection. Thereafter, he received a round of antibiotic treatment and ten months of outpatient therapy. Although the wound eventually closed and stabilized, by September 2007 he had developed swelling and pain. He underwent a bone biopsy after which he was diagnosed with a "smoldering" infection. The remaining hardware in his leg was surgically removed and he underwent additional antibiotic treatment. Several doctors recommended amputation of his leg below the knee,

---

Forrest, 176 Conn. 523, 525(1979). Consequently, the tort system today is better equipped to apportion liability than it was sixty years ago when Dokus and McMahon were decided. Given the preference for apportionment in modern Connecticut tort law, allowing the plaintiff to use his intoxication in order to shield himself from liability for his own negligent conduct would hardly comport with the fundamental policy purposes of the tort compensation system: "[C]ompensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct." Hanks v. Powder Ridge Restaurant Corp., 276 Conn. 314, 327 (2005).

however, he has instead continued to treat the osteomyletis with antibiotics. The smoldering infection will never be cured.

A. Discussion

Metro-North has pleaded Currie's failure to mitigate damages as an affirmative defense. It claims that "[Currie] has failed to properly and adequately mitigate any damages he may have suffered or sustained." Currie maintains that the defendant is not entitled to a mitigation defense, and moves for an order restricting Metro North's "experts from testifying regarding the effect smoking, alcohol, or other conduct may have had on [the plaintiff's] ankle infection and damages." Metro-North has objected to the plaintiff's motion, arguing that Currie's motion "is simply premature, as the question of whether [Metro-North] will be entitled to a mitigation charge will be for the Court to answer *after* it has heard all the evidence on this issue at trial." According to Metro-North "it would be improper for the Court to determine, as a matter of law, that the defendant cannot meet its burden of proof on [a failure to mitigate defense], not only because the Court does not yet have the benefit of considering all of the evidence, but also because this determination falls squarely within the province of the jury." The Court agrees.

Failure to mitigate is an affirmative defense in Connecticut. Connecticut courts "have long adhered to the rule that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. . . . It is also settled law that when . . . there are facts in evidence which indicate that a plaintiff may have failed to promote [his] recovery and do what a reasonably prudent person would be expected to do under the same circumstances, the court, when requested to do so, *is obliged to charge on the duty to mitigate damages.*" Preston v. Keith, 217 Conn. 12, 17 (1991)(emphasis added).

Currie seeks to exclude expert testimony that his recovery was complicated by his general lack of compliance with medical advice. Currie argues that this type of evidence is not admissible under Preston because Metro-North cannot show that "the damages which could have been avoided can be measured with reasonable certainty." Id. Currie claims that Metro-North will be unable to show a "concrete measurable amount" that his damages were increased by his acts and therefore any reduction by the jury based on this defense "would be based on sheer speculation."

Currie's argument fails because he places an artificially high burden of proof on Metro-North. The Court is aware of no

8

authority requiring a defendant pursuing a mitigation defense to establish with absolute precision the amount that damages were increased by a plaintiff's failure to mitigate. By its plain language, Preston only requires "reasonable certainty." Connecticut case law is replete with examples in which damages resulting from a plaintiff's failure to follow medical advice were sufficiently measurable so as to warrant a mitigation charge. See Jancura v. Szwed, 176 Conn. 285(1937) (holding that a jury charge on mitigation damages was proper where the plaintiff did not perform exercises prescribed by his doctor); Geer v. First National Supermarkets, Inc., 5 Conn. App. 175(1985) (upholding the trial court's decision to give a mitigation of damages charge where there was evidence that the plaintiff failed to pursue a treatment plan advised by the defendant's medical expert); Mauro v. Yale-New Haven Hospital, 31 Conn. App. 584 (1993) (holding that the defendant was entitled to a mitigation of damages charge where he presented evidence that the plaintiff disregarded advice to maintain bed rest and not to return to work); Herrera v. Madrak, 58 Conn. App. 320(2000) (upholding the trial court's decision to include a mitigation charge where there was evidence that the plaintiff had missed more than twelve physical therapy appointments).

As these cases show, Connecticut courts have consistently held that failure to follow medical advice can result in measurable damages that are of sufficient "reasonable certainty" to require the Court to give the jury a mitigation charge when requested to do so. For this reason, Currie's motion to exclude evidence to show he failed to mitigate his damages is denied. In the event Metro-North presents sufficient evidence to establish this defense, the Court will charge the jury accordingly.

## CONCLUSION

For the foregoing reasons, Currie's Motion in Limine Regarding Contributory Negligence Defense [doc. # 75] and Motion in Limine Regarding Mitigation Defense [doc. # 76] are DENIED.

SO ORDERED

/s/ Ellen Bree Burns, SUSDJ

ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE